UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ROBERT RAGAN, | ) |
|     Plaintiff, | ) 1:21-CV-00068-DCLC-CHS |
| v. | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Ragan sued his employer Defendant Norfolk Southern Railway Company ("Norfolk Southern") under the Federal Employer's Liability Act, ("FELA"), 45 U.S.C. §§ 51–60, to recover damages for injuries allegedly resulting from a workplace accident. Both parties filed Motions in Limine [Docs. 26–29]. Each party responded to the other's motions [Docs. 30–32, 35], and this matter is now ripe.

**I.    PLAINTIFF'S RAGAN'S MOTION IN LIMINE [DOC. 26]**

Ragan's Motion [Doc. 26] sets out seven numbered paragraphs seeking exclusion of evidence or argument on various topics. The Court addresses each in turn.

**A.    Paragraph 1 - Exclusion of evidence of his receipt of Railroad Retirement Board Disability or Sickness Benefits**

Ragan states that he has "received sickness benefits from the Railroad Retirement Board following the accident at issue in this case. He contends that *Eichel v. New York Central Railroad* requires excluding this evidence. 375 U.S. 253, 254 (1963). Norfolk Southern does not object to its exclusion [Doc. 35, pg. 1]. The Court agrees, and Ragan's motion is **GRANTED** as to any evidence of his receipt of "sickness benefits" from the Railroad Retirement Board.

1

### B. Paragraph 2 - Exclusion of evidence and argument regarding his assumption of risk

Ragan contends that FELA precludes evidence and argument that he assumed the risk of sustaining his accident. *See* 45 U.S.C. § 54; *Tiller v. Atl. Coast Line R.R. Co.*, 318 U.S. 54 (1943). Norfolk Southern does not oppose this either [Doc. 35, pg. 1]. The Parties in this case dispute whether Ragan's injury "result[ed] in whole or in part from the negligence" of Norfolk Southern [*See* Doc. 32, pg. 2]. *See* 45 U.S.C. § 51. The Parties therefore should not interpret the Court's ruling to exclude evidence relevant to disputed issues in this case. With that limitation, evidence and argument offered for the sole purpose of showing assumption of the risk is precluded by statute. 45 U.S.C. § 54. Therefore, the Court **GRANTS** Ragan's motion as to evidence and argument offered solely to establish assumption of the risk.

### C. Paragraph 3 - Exclusion of Prior Injuries / Accidents of Plaintiff

Ragan asserts that evidence of his prior accidents or injuries should be excluded because such evidence is irrelevant and is likely to mislead the jury [Doc. 26, pg. 2]. *See* Fed.R.Evid. 401, 403. Norfolk Southern objects to Ragan's motion to the extent it seeks exclusion of evidence of prior injuries [Doc. 35, pg. 1]. It argues that Ragan previously injured his left knee and lower back, and those past injuries are relevant to the damages to which he is entitled [Doc. 35, pg. 2]. Evidence of prior existing injuries is relevant to damages. Norfolk Southern may introduce evidence of these preexisting injuries. Ragan's motion is therefore **DENIED** as to evidence of his past injuries.

### D. Paragraph 4 – Generally Worded and Vague Safety Rules

Ragan seeks to exclude any evidence, reference or argument "suggesting in any way that [he] allegedly violated any generally worded safety rules of . . . Norfolk Southern" because those rules are irrelevant and confusing to the jury [Doc. 26, pg. 2]. Norfolk Southern argues that Ragan fails to specify which rules he seeks to exclude, and in effect seeks exclusion of any and all of the

railroad's safety rules [Doc. 35, pgs. 2–3]. Indeed, without further context as to the rules' contents, the Court cannot determine their relevancy or the likelihood that they will confuse the jury. Accordingly, Ragan's motion is **DENIED** as to any safety rules of Norfolk Southern.

E.     Paragraph 5 – Surveillance Materials

Ragan states that during discovery he requested and did not receive any video surveillance of him conducted by Norfolk Southern or at its request. He seeks exclusion of "evidence, reference, or argument" concerning these materials under Fed.R.Civ.P. 37(c)(1), which provides that "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial." Norfolk Southern does not oppose this motion [Doc. 35, pg. 1]. Accordingly, Ragan's motion is **GRANTED** as to evidence, reference, or argument concerning any video surveillance of him conducted at the request of Norfolk Southern or on its behalf.

F.     Paragraph 6 – Audio Recording

Ragan seeks to exclude evidence of a voicemail recording of him in which, apparently unaware he was still on the line, he stated "F*ck these mother*ckers" and "They treat me like sh*t, I'll treat them like sh*t" [Doc 26, pg. 3; Doc. 35, pg. 3]. He argues these statements do not tend to prove or negate any fact of consequence to this litigation [Doc. 26, pg. 3]. Norfolk Southern argues that these statements are relevant to Ragan's ulterior motive to sue Norfolk Southern [Doc. 35, pg. 3]. At issue in this case is whether Norfolk Southern was negligent and whether that negligence caused Ragan's injuries. *See* 45 U.S.C. § 51. Evidence is relevant if it tends to make a fact of consequence more or less likely than it would be without the evidence. Fed.R.Evid. 401. Ragan's personal feelings toward Norfolk Southern do not make negligence, causation, or damages any more or less likely. Moreover, if the Court admitted such evidence, there is a substantial risk that the jury would consider Ragan's alleged animus in declining or reducing a

3

verdict. Even supposing the audio had any probative value, it is outweighed by the risk of unfair prejudice and confusing the issues. *See* Fed.R.Evid. 403. Accordingly, Ragan's motion is **GRANTED** as to this audio recording and its contents.

### G. Paragraph 7 – Alleged Furlough

Ragan seeks exclusion of evidence that after his accident Norfolk Southern would have furloughed him, thus reducing the amount of income he lost because of his disability [Doc. 26, pgs. 3–4]. He argues that, because of his seniority, he could have exercised a right to "bump" coworkers at locations outside Chattanooga and so continue working and earning money [*Id.*]. He further contends that because the railroad industry is national and well-established, "it is pure speculation" that he would have lost any future wages if furloughed [*Id.*]. Whether Ragan would have been furloughed is relevant because, if proven, it would limit Ragan's damages unless he persuaded the jury he would have found another paying job. Ragan further objects that any purported furlough is not "in evidence" [*Id.*]. His objection on that ground is premature. Norfolk Southern will have an opportunity to lay an evidentiary foundation at trial. Accordingly, Ragan's motion is **DENIED WITHOUT PREJUDICE** as to any purported furlough.

### II. DEFENDANT'S MOTIONS IN LIMINE

### A. "But For" Causation [Doc. 27]

Norfolk Southern asks the Court to preclude Ragan from arguing that he should recover because Norfolk Southern's negligence was a "but for" cause of his injury. Norfolk Southern contends that permitting Ragan to mention but-for causation will mislead the jury to apply an incorrect legal standard [Doc. 27, pg. 4]. The Supreme Court has stated that FELA did not "eliminate the *concept* of proximate cause" but "describe[d] the test for proximate causation applicable in FELA suits." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 700 (2011). Under the FELA, employers are liable if their negligence played "any part, however small, in the injury." *Id.*

4

at 694 (quoting *Rogers v. Thompson*, 352 U.S. 500, 508 (1957)). Indeed, the statute provides for liability for injuries "resulting in whole or in part" from the employer's negligence. 45 U.S.C. § 51. The Court will provide the standard jury instruction on causation. "[T]he *Rogers* instruction uses the everyday words contained in the statute itself. Jurors can comprehend those words and apply them …." *McBride*, 564 U.S at 700. Norfolk Southern's first Motion in Limine is therefore **DENIED**.

B. **Motion in Limine to Limit the Testimony of Plaintiff's Expert Tim C. Carpenter [Doc. 29]**

Norfolk Southern objects in its next motion to potential testimony by Ragan's economic expert Dr. Tim C. Carpenter [Doc. 29]. Norfolk Southern points to Carpenter's expert report in which he considers as lost income the amount of Tier I and Tier II taxes that would have been paid by Norfolk Southern to the Internal Revenue Service to fund railroad workers' collective retirement benefit plans [*Id.* at 3–4].

As a threshold matter, Ragan contends that this motion, filed September 6, 2022, is untimely on two alternative grounds. First, he claims, Norfolk Southern's motion is a *Daubert* motion in disguise, and therefore should have been filed on or before August 1, 2022 per the amended scheduling order entered January 6, 2022 [Doc. 21]. Alternatively, even if the motion is properly characterized as a motion in limine, Norfolk Southern should have filed it by September 1, 2022 [*See id.*]. Unlike a typical *Daubert* motion, however, Norfolk Southern's motion does not seek to disqualify Carpenter, nor does it appear to deny that the "reasoning or methodology underlying [his] testimony is scientifically valid." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (6th Cir. 2014). The motion is therefore a motion in limine governed by the more recent September 1, 2022 deadline. And, as Norfolk Southern points out, the Court has an independent obligation under Fed.R.Evid. 103(d) to minimize introduction of inadmissible evidence, regardless of when the Court is made aware of its inadmissibility. Further, Ragan has not been prejudiced by

5

the timing of Northern Southern's motion. Accordingly, the Court will consider Norfolk Southern's objection.

Norfolk Southern seeks to exclude "any testimony or opinion[] by [Dr. Carpenter] that attempts to treat or characterize contributions that Norfolk Southern would have made to the Railroad Retirement Board as actual lost yearly income in this case" [Doc. 29, pg. 1]. Federal law governs retirement benefits provided to rail workers. *See Rachel v. Consol. Rail Corp.*, 891 F. Supp. 428, 429 (N.D. Ohio 1995). Both employees and employers must pay Tier I and Tier II taxes, which fund the basic annuity and enhanced pension components of employees' retirement benefits. *Id.*; *see also* 26 U.S.C. §§ 3201, 3221. An employee receives benefits in the amount that the employee would receive under the old-age and disability insurance provisions of the Social Security Act, plus 0.7% of the product of the employee's years of service and the employee's average monthly compensation as defined in the statute. 45 U.S.C. § 231b(a)–(b). For example, an employee who worked for a railroad for ten years at an average monthly rate of $4,000 would receive a monthly payment of 7% (ten years multiplied by 0.7%) times $4,000, for a total of $280 to be added to the base social security payment.[1] The Railroad Retirement Board pays the employee whatever amount results from this formula out of the Treasury. *See Rachel*, 891 F. Supp. at 429–30. The amount of Ragan's lost retirement benefits is therefore the difference between Ragan's actual retirement benefit and the benefit provided by the § 231b formula assuming Ragan had worked to his natural retirement age. *Id.*; *Adams v. Burlington N. R. Co.*, 865 S.W.2d 748, 751 (Mo. Ct. App. 1993).

By contrast, the Tier I and Tier II taxes paid by the employer are set percentages of the employee's compensation. 26 U.S.C. §§ 3201, 3221. Currently, the employer pays 7.65% of

---

[1] If the employee qualifies for an additional annuity under §231b(h)(1), (2) or (5), the amount calculated under subsection (b) is reduced by 25% of that additional annuity. 45 U.S.C. § 231b(b).

6

employee compensation in Tier I taxes and anywhere from 8.2% to 22.1% in Tier II taxes, depending on the program's total assets as compared to its expenses. 26 U.S.C. §§ 3111, 3221, 3241. Thus, although benefit payouts and employer-paid taxes are based on the employee's compensation, the percentages are not necessarily the same. *See Rachel*, 891 F. Supp. at 430 ("Congress determines the size of the tax contributions and the size of Plaintiff's annuity, and it has no obligation to balance the two."). Moreover, employer-paid taxes do not vary with the employee's years of service, whereas benefits do. Similarly situated employees receive the same benefits year to year regardless of the program's funding, but employer-paid taxes may increase or decrease to meet the program's funding needs. *Compare* 45 U.S.C. § 231b(b) *with* 26 U.S.C. §§ 3111, 3221, 3241. Employer-paid taxes are therefore a poor proxy for the amount of benefits an employee can expect to receive.

Therefore, because § 231b(b) provides a clear formula for calculating benefits, Dr. Carpenter's opinion that the amount Norfolk Southern would have paid in Tier I and Tier II taxes should be considered as Ragan's lost income would mislead the jury. *See Adams*, 865 S.W.2d at 751 ("Any link between the taxes paid and the benefits is too tenuous to provide a true measure of plaintiff[']s loss."). Ragan's citation to *Davis v. CSX Transp., Inc.*, is unavailing. No. 1:07-cv-79, 2008 WL 2117151, *7 (E.D. Tenn. May 20, 2008). There, the court deferred ruling on the railroad's request to exclude evidence of Tier I and Tier II taxes because it was not clear what the employee's pension benefits were and what he would have been entitled to had he continued working, and the court could not determine whether the employee's expert had included the taxes in his calculation of damages. *Id.* Here, by contrast, Carpenter's expert report includes the value of Tier I and Tier II taxes Norfolk Southern would have paid [Doc. 29-1, pgs. 5–6]. Norfolk Southern argues, and the Court agrees, that the only reason for including those amounts in the expert report would be to offer them as evidence of Ragan's lost income [Doc. 29, pg. 2]. Courts

7

exclude opinion or testimony treating the employer's projected Tier I and Tier II tax payments as lost income to FELA plaintiffs. *See Rachel*, 891 F. Supp. at 429–30; *Edwards v. Atchison*, 684 N.E.2d 919, 924 (Ill. Ct. App. 1997);[2] *Adams*, 865 S.W.2d at 751; *Cephus v. CSX Transp., Inc.*, NO. 1:14-CV-1891-SCJ, 2016 WL 10591433, at *3 (N.D. Ga. Dec. 7, 2016).

Accordingly, Norfolk Southern's motion [Doc. 29] is **GRANTED**. He may, if he chooses, perform the appropriate calculations under 45 U.S.C. § 231b and offer his opinion that Ragan would have received the amount provided by that formula assuming he had worked to his natural retirement age.

### C. Norfolk Southern's Miscellaneous Motions in Limine [Doc. 28]

Norfolk Southern's final motion [Doc. 28] lists numbered miscellaneous items it seeks to exclude. The Court addresses these in turn.

#### 1. Workers' compensation benefits

Norfolk Southern requests that the Court exclude evidence that FELA provides Ragan's sole remedy and that he cannot pursue workers' compensation [Doc. 28, ¶ 1]. *See Kodack v. Long Island R. Co.*, 342 F.2d 244, 247 (2d. Cir 1965); *Snyder v. Lehigh Valley R. Co.*, 245 F.2d 112, 116 (3d Cir. 1957). In *Kodack*, the court held that although counsel improperly remarked in an opening statement that the plaintiff could not receive workers' compensation, a new trial was not warranted because the trial judge's curative instruction dispelled any prejudice to the defendant. 342 F.2d at 247. In *Snyder*, the trial court erred in instructing the jury in response to a question during deliberations that the plaintiff was not receiving worker's compensation benefits. 245 F.2d

---

[2] Contrary to Ragan's argument [Doc. 30, pg. 3], *Edwards* does not support his position. There, the Court did not approve a verdict which included as damages the amount the employer would have paid in Tier I and Tier II taxes. 684 N.E.2d at 924. Instead, the Court declined to disturb those parts of an itemized verdict that could not have included those amounts, and remanded for a hearing on future lost earnings to clarify the amount of damages to which the plaintiff would be entitled if properly calculated according to the formula in § 231b.

8

at 116. The appeals court reasoned that, compounding the prejudicial effect of communication between the judge and jury without counsel present, the trial judge should have instructed the jury that workers' compensation was irrelevant to the case, and his failure to do so likely confused the jury.

In response, Ragan cites *Battaglia v. Conrail*, No. L–08–1332, 2009 WL 3325903, at *10 (Ohio Ct. App. Oct. 16, 2009). There, the court rejected the argument that evidence concerning unavailability of workers' compensation establishes the *absence* of collateral source payments, and if the presence of such payments is inadmissible, their absence should be, too. The court instead concluded that the trial court did not act "arbitrarily, unreasonably, or unconscionably" in instructing the jury that the plaintiff was ineligible because a jury might adjust its award based on the mistaken assumption that the plaintiff was receiving worker's compensation. *Battaglia*, 2009 WL 3325903, at *10.[3]

Although the Sixth Circuit has not directly addressed this question, it has noted in dicta that faced with a FELA plaintiff seeking to alert the jury that FELA is the plaintiff's only remedy, a trial court could appropriately instruct that "the jury should make no … inference about the availability or unavailability of other sources of compensation." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 355 (6th Cir. 2002).

The Court agrees with Norfolk Southern that the absence of collateral source payments is no more relevant to Ragan's claims than their presence. The Court therefore **GRANTS** Norfolk Southern's motion as to evidence or argument that Ragan is ineligible for workers' compensation.

---

[3]  In doing so, the court relied on a Seventh Circuit case that came out the other way. *See id.*; *Schmitz v. Canadian Pacific Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006). The Seventh Circuit seemingly did not share the *Battaglia* court's concern that a jury would reduce an award based on worker's compensation benefits unless instructed the plaintiff was not receiving them. *Schmitz*, 545 F.3d at 685.

### 2. Norfolk Southern's size, financial condition solvency or ability to pay

Norfolk Southern asks the Court to exclude "[a]ny reference to [Norfolk Southern's] size, financial condition, solvency, or ability to pay a verdict or satisfy a judgment in this case" [Doc. 28, ¶ 2]. Ragan does not oppose Norfolk Southern's request [Doc. 31, pg. 3]. The Court agrees that such evidence would be irrelevant and unduly prejudicial. Accordingly, Norfolk Southern's motion is **GRANTED** as to evidence of its size, financial condition, solvency, or ability to pay a verdict or satisfy a judgment.

### 3. Medical bills

Norfolk Southern seeks to exclude evidence that Ragan has incurred medical expenses [Doc. 28, ¶ 3]. It claims, without citation to any existing record, that it has already paid those expenses [*Id.*]. Ragan asserts that he has outstanding medical bills of $5,616.47 that Norfolk Southern has not paid [Doc. 31, pg. 3]. The record before the Court is insufficient to conclude that evidence of Ragan's medical expenses is inadmissible. Accordingly, Norfolk Southern's motion is **DENIED WITHOUT PREJUDICE** as to Ragan's medical expenses.

### 4. Congressional intent of FELA

Norfolk Southern asks the Court to exclude evidence or argument concerning Congress' intent in enacting FELA [Doc. 28, ¶ 4]. The Court agrees with Norfolk Southern that it would not be "necessary or appropriate" for the jury to consider Congress' intent if properly instructed on the law. *Stillman v. Norfolk & W. Ry.*, 811 F.2d 834, 838 (4th Cir. 1987). Ragan does not oppose Norfolk Southern's request [Doc. 31, pg. 3]. Accordingly, Norfolk Southern's motion is **GRANTED** as to argument concerning Congress' intent in enacting FELA.

### 5. Alternative safer methods of work

Norfolk Southern requests exclusion of evidence that safer methods of work were available because the issue in this case is simply whether it provided a reasonably safe workplace [Doc. 28,

¶ 5]. *See Stillman*, 811 F.2d at 838. Ragan does not oppose exclusion [Doc. 31, pg. 3]. Norfolk Southern's motion is therefore **GRANTED** as to evidence of alternative safer methods of work.

### 6. Remedial measures and investigation

Norfolk Southern requests exclusion of reference or mention of subsequent modification of the alleged hazard in this case and evidence that its post-accident investigation was insufficient [Doc. 28, ¶¶ 6–7]. Ragan does not oppose either request [Doc. 31, pgs. 3–4]. Fed.R.Evid. 407 requires exclusion of measures taken after an injury that would have made it less likely to occur if offered to show negligence, culpable conduct, product defects, or the need for a warning. Modification of the alleged hazard in this case is excludable under the rule. Because the parties have agreed, the Court **GRANTS** Norfolk Southern's motion as to reference or mention of subsequent modification of the alleged hazard in this case and evidence that its post-accident investigation was insufficient.

### 7. Inflation

Norfolk Southern's motion requests exclusion of "[a]ny reference to inflation or the effect of inflation upon any award in FELA case [sic], and [the] proper method for calculating future wage loss is set forth in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983)" [Doc. 28 ¶ 8]. This request presumes that *Pfeifer* sets forth only one "proper method" for calculating interest. It does not. *See* 462 U.S. at 547–552. Instead, the Supreme Court provided alternative methods, any of which is acceptable. *Id.* Norfolk Southern does not indicate its preferred method, and in any event, *Pfeifer* does not support a total bar on evidence of inflation. *See id.* Ragan contends his expert will need to consider inflation in discounting his lost earnings to present value [Doc. 31, pg. 4]. The Court agrees. Norfolk Southern's motion is therefore **DENIED** as to evidence of inflation.

### 8. Gross wages

Norfolk Southern seeks to exclude evidence of the amount of Ragan's gross wages had he continued working [Doc. 28, ¶ 9]. Indeed, because FELA damages are not subject to tax, the proper measure of damages is ordinarily the plaintiff's after-tax earnings. *Pfeifer*, 462 U.S. at 537. Nonetheless, Ragan argues his expert will need to testify as to Ragan's gross wages to explain his analysis, and excluding gross wages would undermine his ability to testify [Doc. 31, pg. 4]. A properly instructed jury will know to base any damages award on Ragan's after-tax earnings. The Court therefore sees no need to exclude Ragan's gross wages at this time. Norfolk Southern's motion is therefore **DENIED** as to Ragan's gross wages.

### 9. Other incidents or accidents

Lastly, Norfolk Southern seeks to exclude evidence of other incidents or accidents, including other accidents allegedly involved in this case, because those accidents are not relevant to the alleged negligence or any other issue in this case [Doc. 28, ¶ 10]. Ragan agrees that evidence of other incidents or accidents should be excluded [Doc. 31, pg. 4]. The motion is **GRANTED.**

### III. CONCLUSION

For these reasons, Ragan's motion [Doc. 26] is **GRANTED IN PART AND DENIED IN PART**. Norfolk Southern's motion concerning "But For" Causation [Doc. 27] is **DENIED**. Its miscellaneous motion [Doc. 28] is **GRANTED IN PART AND DENIED IN PART**. Its motion to limit the testimony of Ragan's economic expert [Doc. 29] is **GRANTED**.

**SO ORDERED**:

s/ Clifton L. Corker
United States District Judge